UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RAY SALAZAR, DAVID OCHOA, JESUS B. OCHOA, JR., PAUL CRUZ MORENO, RICHARD A. NAJERA, FERMIN DORADO, JULIE REYNOLDS, GUILLERMO ACOSTA, and BERTHA VASQUEZ, | § | |
| Plaintiffs, | § | |
| v. | § | EP-12-CV-00403-DCG |
| THE CITY OF EL PASO, TEXAS, a municipal corporation; JOHN COOK, in his official capacity as Mayor of El Paso, Texas; JOYCE WILSON, in her personal and official capacity as City Manager of El Paso, Texas; CORTNEY NILAND, in her personal and official capacity as Representative, District 8, El Paso, Texas; STEVE ORTEGA, in his personal and official capacity as Representative, District 7, El Paso, Texas; and ANN MORGAN LILLY, DR. MICHIEL NOE, and SUSIE BYRD, in his or her official capacity as Representatives of their several Districts in El Paso, Texas, | § | |
| Defendants, | § | |
| and | § | |
| MOUNTAIN STAR SPORTS GROUP, LLC and MOUNTAIN STAR SPORTS GROUP, LLC-EL PASO BASEBALL CLUB SERIES, | § | |
| Defendant-Intervenors. | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court for consideration is Plaintiffs Ray Salazar, David Ochoa, Jesus B. Ochoa, Jr., Paul Cruz Moreno, Richard A. Najera, Fermin Dorado, Julie Reynolds, Guillermo Acosta, and Bertha Vasquez's (collectively "Plaintiffs") "Motion for Preliminary Injunction" (ECF No. 3), filed on October 4, 2012, and Corrected First Amended Preliminary Injunction and Class Action Allegations (ECF No. 37), filed on November 7, 2012.[1] On this day, the Court will also consider Defendants The City of El Paso, John Cook, Joyce Wilson, Cortney Niland, Steve Ortega, Ann Morgan Lilly, Dr. Michiel Noe, and Susie Byrd's (collectively "Defendants") "Corrected First Amended Motion to Dismiss" (ECF No. 48), filed on October 18, 2012, and Defendant-Intervenors Mountain Star Sports Group, LLC and Mountain Star Sports Group, LLC-El Paso Baseball Club Series' (collectively "Mountain Star Sports" or "Defendant-Intervenors") "Motion to Dismiss" (ECF No. 46), filed on November 13, 2012. After reviewing the parties' respective motions and attendant filings, as well as the applicable law, the Court, for the reasons set forth below, **DISMISSES** the above-captioned cause of action for want of jurisdiction.

### I. Background

---

[1] Plaintiffs also filed an additional request for a preliminary injunction in its "Corrected First Amended Preliminary Injunction and Class Action Allegations" (ECF No. 37), on November 7, 2012. The instant filing is nearly identical to Plaintiffs' "First Amended Complaint" (ECF No. 36), filed earlier that day. The only discrepancy between the two filings is that the former filing includes the newly added plaintiffs in the style of the case and includes six (6) additional sentences discussing the newly added plaintiffs in the instant case. In reviewing the docket sheet and the documents thereof, the Court notes that Plaintiffs' "Corrected First Amended Preliminary Injunction and Class Action Allegations" is a modified version of the First Amended Complaint because it includes the necessary and recently added plaintiffs to the above-captioned cause of action. Further, in its "Corrected First Amended Preliminary Injunction and Class Action Allegations," Plaintiffs "incorporate by reference the Request for Preliminary Injunction as if the same were set out at length." Pls.' Corrected First Amd. Prelim. Inj. & Class Allegations 15–16 [hereinafter Pls.' First Amd. Prelim. Inj.], ECF No. 37. The Court notes that the incorporation by reference alludes to Plaintiffs' Motion for Preliminary Injunction, filed on October 4, 2012; as such, the Court will consider Plaintiffs' initial Motion for Preliminary Injunction and its subsequently filed "Corrected First Amended Preliminary Injunction and Class Action Allegations." *See* Pls.' Mot. for Prelim. Inj. 1–2, ECF No. 3; Pls.' First Amd. Prelim. Inj. 15–16.

On June 26, 2012, the El Paso City Council[2] ("EPCC") approved a resolution (the "June 26th resolution")[3] that authorized the City Manager, Defendant Joyce Wilson, to proceed with plans to build a ballpark on the site currently occupied by City Hall in downtown El Paso, Texas. First Amd. Compl. 7, ECF No. 36; Def.-Intervenor's Resp. to Pls.' Req. for Prelim. Inj. 3 [hereinafter Def.-Int. Resp. to Prelim. Inj.], ECF No. 47. The City's plans consisted of leasing the baseball park to Defendant-Intervenors Mountain Star Sports, relocating the City's existing operations to a different location, and constructing a ballpark where City Hall is currently situated to house the future baseball team. First Amd. Compl. 7. The specific language of the June 26th resolution is as follows:

> 1. **Public/Private Partnership.** That the City Manager is authorized to sign the Term Sheet with Mountain Star Sports Group, LLC ("Investors") attached to this Resolution as Exhibit "A" in order to signal the creation of the public/private partnership and the intent of the City Council to construct the Ballpark in the event the Investors are able to purchase the Team and relocate it to El Paso.
>
> 2. **Location of Ballpark.** Having reviewed all the possible sites for the Ballpark, the City Council has determined that the site currently occupied by City Hall, the Insights Museum, the Community Garden and the supporting parking areas fronting on Franklin Street allows for the best redevelopment opportunity and authorizes the City Manager to take measures to complete the planning for the redevelopment of such site and to take steps to make the site available for the construction, including termination of leasehold interests.
>
> 3. **Relocation of City Hall.** The City Manager is authorized to move forward to formulate long term and short term execution plans for the relocation of City operations from the City Hall site to other locations in the downtown area to allow for the construction of the Ballpark.
>
> 4. **Financing Ballpark Construction.** The City Manager is authorized to proceed with the proposed financing plan, which ultimately may be

---

[2] The El Paso City Council consists of eight (8) council representatives. Of the eight (8) representatives, only five (5) are named as Defendants in the instant suit—Ann Morgan Lilly, Susie Byrd, Dr. Michiel Noe, Steve Ortega, and Cortney Niland. The following council representatives were not identified as parties—Emma Acosta, Eddie Holguin, Jr., and Carl L. Robinson.

>    modified to include the possible use of (i) a venue hotel occupancy tax if approved by the voters at a duly-called election; (ii) lease revenue bonds issued by a local government corporation formed by the City; and/or (iii) other debt obligations issued by or on behalf of the City for the construction and development of the Ballpark.
>
> **5. Final Contract.** The City Manager or her designee is authorized to negotiate a contract containing the terms and conditions set forth in the attached Term Sheet for the construction and future operations and maintenance of the Ballpark and to present it to City Council for consideration upon completion of the negotiations.

See Pls.' Br. Ballot Language, Ex. B-3, ECF No. 52-1.[4]

Soon after the passing of the above resolution, displeased registered voters circulated and signed a petition in an effort to repeal the June 26th resolution.[5] *Id.* The petition calls for an

---

[4] *See also* City of El Paso, Agenda for Regular Council Meeting (June 26, 2012), available at http://www.elpasotexas.gov/muni_clerk/agenda/06-26-12/06-26-12%20Agenda.pdf; *and* City of El Paso, Regular Council Meeting Minutes at 13–14, item 12.3 (June 26, 2012), available at http://www.elpasotexas.gov/muni_clerk/agenda/07-0312/07031201%20Regular%20City%20Council%20Meeting%20Minutes%20for%2006-26-12.pdf.

[5] The language set forth in the petition, titled "Save City Hall," mirrors the language expressed in the June 26th resolution. It states that,

> We, the undersigned, petition the adoption of: An ordinance repealing a resolution approved by City Council on June 26, 2012 styled under 12. CITY MANAGER: 3. Discussion and action on a Resolution that the City Manager be authorized to sign the Term Sheet as agreed upon by the City of El Paso and Mountain star Sports Group, LLC, in order to signal the creation of the public/private partnership and the intent of the City Council to construct a public sports facility ("Ballpark") in the event the investors are able to purchase a Triple-A Minor League Baseball Franchise and relocate it to El Paso; that the City Council intends to locate the Ball park on the site currently occupied by City Hall, Insights Museum, the Community Garden and the supporting parking area fronting on Franklin street and authorizes the City Manager to take measures to complete the planning for the redevelopment of such site and to take steps to make the site available for the construction, including termination of leasehold interests, and to move forward to formulate long term and short term execution plans for the relocation of City operations from the City Hall site to other locations in the downtown area for the construction of the Ballpark; that the City Manager be authorized to proceed with proposed financing plan to include the possible use of (i) a venue hotel occupancy tax if approved by the voters at a duly called election; (ii) lease revenue bonds issued by a local government corporation formed by the City; and/or (iii) other debt obligations issued by or on behalf of the City for the construction and development of the Ballpark; and that the City

adoption of the "ordinance repealing a resolution approved by City Council on June 26, 2012." *Id.*[6] Following the above language, the petition sets forth, "Ballot Language: Shall the City of El Paso Repeal Decision to Demolish City Hall?" *Id.*

Petitioners commenced the circulation of this initial petition to comply with the City of El Paso's Municipal Code. The relevant Code also referred to as the City Charter, sets forth a two-part process effectuating an initiative process for the registered voters of El Paso, Texas. *See* El Paso, Tex., Code art. 3, § 3.11 (2012) [hereinafter El Paso Code § 3.11]. Respectively, if said registered voters would like to propose an ordinance to City Council and potentially for a vote to the City's electorate, the Charter affords the opportunity for voters to participate in such a process on the condition that a petition is signed and certified by the City Clerk with a requisite number of signatures. *Id.* The relevant section of the Charter, entitled "Initiative," states the following:

> Whenever a number of registered voters equal to at least five percent of the voters who voted in the last general City election sign a petition setting forth the precise content of an ordinance desired by the signers, the Council must place that ordinance on the agenda of a Council meeting to be held within thirty working days of the receipt, by the City Clerk, of the petition bearing the authenticated names and addresses of the petitioners. Such an item shall be treated by the Council exactly as any other proposed ordinance.
>
> Should an ordinance proposed by such petition not be enacted by the Council, or should it be enacted in an amended form, a second petition, signed by a number of registered voters equal to at least five percent of the

---

Manager or her designee be authorized to negotiate a contract concerning the terms and conditions set forth in the Term Sheet for the construction and future operations and maintenance of the Ballpark and to present it to City Council for consideration upon completion of the negotiations. (All Districts).

*See* Pls.' Br. Ballot Language, Ex. B-3, ECF No. 52-1.

[6] In arguendo, and without commenting on the merits of the instant suit, the Court notes that the proposed ordinance may not necessarily preclude the City from demolishing City Hall. *Compare* Pls.' Br. Ballot Language 1–5, *with* Defs. Resp. to Pls.' Br. 3–4, ECF No. 54.

> voters who voted in the last general City election, may be submitted to the City Clerk and that official shall have twenty working days in which to authenticate the signatures and thereafter must place the reproposed ordinance on the ballot at the next general election specified in State law, if the proposal received the favorable vote of a majority of those voting in that election it shall thereupon become a City ordinance.
>
> The Council is not obliged to consider the same ordinance initiated by petition, or one that is substantially the same, more often than once in two years.

See El Paso Code § 3.11.

In compliance with the Initiative provision, the City received a petition[7] with the requisite number of certified signatures. First Amd. Compl. 7. Resultantly, EPCC was required to consider the petitioners' ordinance and place the proposed ordinance on the agenda for the City Council meeting on September 18, 2012. On that said day, EPCC considered the ordinance and voted not to enact the attached ordinance to the petition, i.e. not to repeal the June 26th resolution. *See id.*[8]

On September 19, 2012, a second petition was commenced in compliance with Section 3.11. The second petition set forth the same language that was expressed in the first petition. In contrast to the former petition drive, the objective of this second drive was to put the ordinance

---

[7] The Court notes that the petition requesting for the repeal of the June 26th ordinance was not initiated nor independently circulated by the Plaintiffs in this lawsuit. At the evidentiary hearing concerning Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs Ray Salazar, David Ochoa, and Jesus B. Ochoa, Jr. testified that they may have signed the petition but that they did not commence the petition drive nor were they involved in drafting the ballot language on the petition. *See* Transcript of Evidentiary Hearing on Plaintiffs' Motion for Preliminary Injunction at 17–19, 22–26, 64-67, 103–05, 107–10 (Nov. 16, 2012) [hereinafter Tr. Prelim. Inj.]. Furthermore, the petition was not filed by any of the named plaintiffs in the above-styled cause, rather by a "Salvador Gomez." *Id.* at 124; *see also* Pls.' Br. Ballot Language, Ex. B-3.

[8] *See* City of El Paso, Regular Council Meeting Minutes at 15–18 (Sept. 18, 2012), available at http:// www.elpasotexas.gov/muni_clerk/agenda/09-25-12/09251201%20Regular%20City%20Council%20Meeting%20Minutes%20for%2009-18-12.pdf (noting that petitioners' ordinance to repeal a resolution approved by City Council on June 26, 2012, was item fifteen (15) on the EPCC Agenda and that the ordinance in question was voted down by City Council with a four (4) to three (3) vote, and one (1) abstention).

before a vote to the City's electorate. *Id.* The second petition allegedly comprised of more than 2,500 signatures and was filed with El Paso's Municipal Clerk, Richarda Duffy Momsen, on October 30, 2012. Section 3.11 of the Code establishes that the City Clerk will have twenty (20) working days to certify the signatures and hence, whether the ordinance proposed in the second petition will be placed on the ballot at the next general election. *See* El Paso Code § 3.11 ("[O]fficial shall have twenty working days . . . to authenticate the signatures and thereafter must place the reproposed ordinance on the ballot . . ."); Tex. Elec. Code Ann. § 41.001 (2011) (Subsection "(a) Except as otherwise provided by this subchapter, each general or special election in this state shall be held on one of the following dates: (1) the second Saturday in May in an odd-numbered year. . ."). Accordingly, the signatures of the second petition are anticipated to be certified by December 4, 2012. *See* Tr. Prelim. Inj. at 119–20, 128–30.

Prior to the filing of the second petition with the City Clerk, Plaintiffs filed suit in this Court on October 4, 2012. Plaintiffs allege that Defendants committed an unlawful expenditure of municipal taxpayer funds and violated 42 U.S.C. §§ 1983 and 1985(3) by engaging in a conspiracy against Mexican/ Chicano/ Latin Americans to demolish City Hall for the purpose of constructing a baseball park for a Triple A (AAA) Minor League baseball team in downtown El Paso, Texas. Compl. 8–11, ECF No. 1; First Amd. Compl. 8–14.[9] Plaintiffs further allege that they, along with other Mexican/ Chicano/ Latin American voters, have been deprived of their right to vote on whether to demolish City Hall, and the deprivation of that vote results in an illegal expenditure of taxpayer funds and evidences the basis for Plaintiffs' claims pursuant to §§ 1983 and 1985(3). First Amd. Compl. 8–14. As such, Plaintiffs seek to preliminarily enjoin Defendants from demolishing City Hall until the matter is submitted to a vote to the electors of

---

[9] Plaintiffs filed a First Amended Complaint on November 6, 2012, alleging but clarifying the same causes of action set forth in the original complaint. *See e.g.,* Compl., *and* First Amd. Compl.

El Paso, Texas, in an effort to thwart the alleged illegal expenditure of funds, conspiracy, and deprivation of voting rights. Pls.' Mot. for Prelim. Inj. 1–2, ECF No. 3; Pls.' First Amd. Prelim. Inj. 15–16.

Thereafter, the Court granted Plaintiffs' request for a hearing on its motion for a preliminary injunction. In addition, the Court also ordered the parties to submit briefs before the evidentiary hearing concerning the jurisdiction of this Court—namely, standing and ripeness. On November 13, 2012, Defendant-Intervenors moved to intervene in the instant case, without objection from any of the named plaintiffs and/or defendants, and on November 16, 2012, the Court held an evidentiary hearing on Plaintiffs' motion and consequently, granted Defendant-Intervenors' motion to intervene. *See* Mot. to Intervene, ECF No. 45; Minute Entry for Proceedings, ECF No. 51.

## II. Discussion

### A. Legal Standard

Article III "requires a federal court to satisfy itself of jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). Without jurisdiction the court cannot proceed at all in any cause. "'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *United States v. Tex. Tech Univ.*, 171 F.3d 279, 287 (5th Cir. 1999) (quoting *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998)). As such, "[a] court must find jurisdiction . . . before determining the validity of a claim." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n. 2 (5th Cir. 1999) (citing *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).

Likewise, Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal if the court lacks jurisdiction over the subject matter of Plaintiffs' claims. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. Fed. R. Civ. P. 12(b)(1). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *See Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). Furthermore, the plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977).

### B. Jurisdiction

Preliminarily, gathered from the respective parties' filings, the Court finds that the underlying current of the litigation is Plaintiffs' concern of a tainted political process and the resulting alleged inability for Plaintiffs to exercise their rights as citizens, taxpayers, and registered voters of El Paso, Texas. Because it is not the Court's position or onus to comment on the politics of local government, rather to rule on the law within its jurisdictional and judicial limits,[10] the Court will not expound on Defendants' decision to construct a baseball park, or to demolish City Hall.[11]

---

[10] "The role of the federal courts is of limited jurisdiction to instances where the elective political process is unresponsive to Constitutional and federal statutory dictates and principles." *Save Our Aquifer v. City of San Antonio,* 237 F.Supp.2d.721, 728 (W.D. Tex. 2001) (Biery, J.) (citing U.S. Const. art. III, §§ 1, 2 (setting forth circumscribed power of federal courts).

Before exercising jurisdiction in the instant cause of action, the Court must decide as a matter of law whether the matters presented before it are within this Court's jurisdiction, specifically, whether the matters are ripe for resolution. *Monk v. Hutson*, 340 F.3d 279, 281 (5th Cir. 2012). Defendants and Defendant-Intervenors assert in their respective motions to dismiss that this case is nonjusticiable because Plaintiffs' claims are not ripe for adjudication. Defs.' Mot. to Dismiss 5–10; Def.-Int. Mot. to Dismiss 3–5; Defs.' Supp'l Br. 8–11, ECF No. 44. Thus, before considering the merits of Plaintiffs' motion, we must answer the threshold question whether Plaintiffs present an "actual controversy"—a requirement imposed by Article III of the Constitution which embodies and promotes a "concern about the proper and properly limited roles of the courts in a democratic society." *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal citations omitted). The ripeness doctrine is also drawn "from prudential reasons for refusing to exercise jurisdiction" to ensure that shifting hypothetical circumstances do not make resolution of the legal issues necessary. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993). In determining whether Plaintiffs' claims are ripe for review, this Court concedes that the doctrine places "fundamental limits on federal judicial power," nonetheless, a court cannot neglect to respect or attempt to exceed such limits. *Allen*, 468 U.S. at 750.

Therefore, "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586

---

[11] "Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments. Those decisions are entrusted to our . . . elected leaders, who can be thrown out of office if the people disagree with them. It is not our job to protect the people from the consequences of their political choices." *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, ——U.S.——, 132 S.Ct. 2566, 2579 (2012).

(5th Cir. 1987). "'The basic rationale [behind the ripeness doctrine] is to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Roark,* 522 F.3d at 544 (alteration in original) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)). Consequently, it weeds out "those matters that are premature because the injury is speculative and may never occur." *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)). A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is *not* ripe if further factual development is required. *See Texas v. United States,* 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (citation and internal quotation marks omitted) (emphasis added).

Defendants and Defendant-Intervenors maintain that Plaintiffs' claims are not ripe because their claims are contingent on the assumed facts that (i) the second petition will satisfy the requirements set forth in Section 3.11 of the City Charter and (ii) that the City will not place the initiative on the ballot as required by the relevant section. Further, Defendants and Defendant-Intervenors point out that Plaintiffs do not allege that the City has failed to comply with the initiative and electoral provisions set forth in the City Charter. As such, Defendants have not yet denied Plaintiffs the right to vote.

Plaintiffs respond that their claims are in fact ripe because they, i.e. municipal taxpayers and registered voters, presently have a right to vote on the matter as to whether to demolish City Hall. Plaintiffs contend that their matters are framed with a degree of finality because the contingent events are so likely to occur because the "City fully intends to deny Plaintiffs the right

to vote—obviously abolishing the legal authority of the City Charter." Pls.' Supp'l Br. 8, ECF No. 43. Without relief, Plaintiffs will be deprived of their right to vote because such harm is "imminent." *Id.* at 7.

Ripeness is "peculiarly a question of timing." *See Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974). Thus, in determining whether a claim is ripe for review this Court will make a two-fold inquiry as (i) to whether the issues tendered are appropriate for judicial resolution, i.e. fitness, and (ii) to assess the hardship to the parties if judicial relief is denied on the existing state of affairs, i.e. hardship. *Texas*, 497 F.3d at 498. Under these principles, this dispute is not ripe for judicial resolution. Plaintiffs allege three causes of actions, and in each respective action, Plaintiffs contend that they have been injured or will be injured because Defendants have deprived Plaintiffs on the right to vote on a city ordinance.

The Court concedes that the right to vote is a fundamental right and undoubtedly commands judicial relief to safeguard that right when warranted. *See e.g., Kramer v. Union Free Sch. Dist. No. 15,* 395 U.S. 621, 626 (1969); *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 670 (1966); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) (declaring that "[n]o right is more precious in a free country"); *United States v. Classic*, 313 U.S. 299, 314 (1941) (pronouncing the right to vote to be "established and guaranteed by the Constitution"); *Cf. San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 34–35 n. 74, 78 (1973) (stating that the "right to vote, per se, is not a constitutionally protected right," but that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction"). The right to vote is protected not simply because it enables individuals to pursue political ends, but because voting is a meaningful participatory act through which individuals create and affirm membership in the community and thereby transform their identities as individuals and as part of a greater

collectivity. To wit, such a right "is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynold v. Sims*, 377 U.S. 533, 555 (1964).

Nonetheless, in the instant case, although a second petition is sitting before the City Clerk with the objective to place the ordinance on the ballot for a vote, no such vote has been pronounced to the electorate. Such a vote need not be pronounced until twenty (20) working[12] days after the petition has been filed with the City Clerk. *See* El Paso Code § 3.11. Without the declaration that a vote will or will not transpire, such a vote does not yet exist, nor can it be denied. Plaintiffs, here, are requesting judicial relief so that they may effectuate and exercise their prospective right to an initiative. Although noble, the proclamation of such a vote depends on three factual, rather than legal, developments—i.e., (i) the second petition will satisfy the requirements set forth in Section 3.11 of the City Charter; (ii) that the City will not place the initiative on the ballot as required by the relevant section; and arguably, (iii) the City demolishes City Hall before the prospective vote at the next general election.

Despite the fundamental nature of the right to vote, the right *to* an initiative (or referendum) is not a federally guaranteed right. See *e.g., Kendall v. Balcerzak*, 650 F.3d 515, 522-23, 528 (4th Cir. 2011); *Florida Hometown Democracy, Inc. v. Browning*, 2008 WL 4081174, *2 (N.D. Fla. 2008); *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1212 (10th Cir. 2002) (noting that where the people reserve the initiative or referendum power, then the exercise of that power is protected); *Stone v. City of Prescott*, 173 F.3d 1172, 1175 (9th Cir.), *cert. denied*, 528 U.S. 870, (1999) (asserting nevertheless that the State may not impermissibly burden the exercise of the right to petition the government by initiative or referendum) (internal citations

---

[12] "Working" days excludes Fridays, Saturdays, and Sundays, as well as local and state holidays. *See* Tr. Prelim. Inj. at 119–20, 128–30.

omitted); *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 296 (6th Cir. 1993) (finding that the signing of a petition to initiate legislation is not entitled the same protection as exercising that right to vote).[13] The right to place an initiative petition on the ballot is a right that affords participation in direct democracy by the grace of the state legislature. *Kelly v. Macon-Bibb Cnty. Bd. of Elections,* 608 F.Supp. 1036, 1039 (M.D. Ga. 1985) ("[D]irect democracy . . . by initiative or referendum . . . is a matter of legislative grace"). Accordingly, states have the discretion to afford their citizens the opportunity to participate in an initiative process, while also retaining the authority to interpret the scope and availability of the afforded right. *See Gibson v. Firestone,* 741 F.2d 1268, 1272 (11th Cir. 1996).

Ergo, the Court looks to the City's Municipal Code, namely Section 3.11, in deducing whether Plaintiffs' claims are ripe for review.[14] Before the ordinance set forth in the petition can be submitted for an electorate vote, the ordinance must be reviewed and subsequently, denied by City Council. *See* El Paso Code § 3.11. Thereafter, petitioners must commence a second petition drive and file the petition with the City Clerk, whereupon, the City Clerk must re-certify the signatures therein to comply with said section of the Code.

Here, all parties agree that the petitioners have complied with the first stage of the initiative process advanced by the City Charter. The second stage of the process, however, has not been fully effectuated. Correspondingly, the City has not yet declared that there will be a

---

[13] The Court does not presently comment on the merits of Plaintiffs' case but provides an initial background to exemplify that Plaintiffs' suit depends on the provisions set forth in the City Charter. Further, Plaintiffs do not challenge the Initiative provision or any other provisions expressed in the City Charter that may hinder Plaintiffs' right to vote and participate in the initiative process; moreover, Plaintiffs do not allege nor can the Court find that Defendants failed to comply with the provisions set forth in the respective charter. Consequently, the Court reads Section 3.11 in deducing whether Plaintiffs' claims are in fact ripe.

[14] Unlike other states, the Texas State Constitution does not allude to the referendum or initiative process; as such it does not explicitly bestow the right to participate in said processes. Thus, the Court turns to the relevant section of El Paso's Municipal Code to cognize the afforded initiative process to the registered voters of El Paso.

vote, or alternatively, that there will not be a vote. The City Clerk has also not yet determined that the signatures meet the requirements set forth in the Initiative provision of the Code. Plaintiffs' claims alleged in its complaint are contingent on the above events; such events are not legal, instead they are imperatively factual. Since further factual development is required for Plaintiffs to demonstrate an immediate harm by Defendants and Defendant-Intervenors, the harm alleged is contingent and uncertain. Thus, Plaintiffs' case at this point is abstract and hypothetical, and accordingly, is not presently fit for judicial decision. The Court agrees with Defendants and Defendant-Intervenors that Plaintiffs' claims are not ripe, thus, the Court currently lacks subject matter jurisdiction over this case. Because this Court dismisses this action for the reasoning that it is not ripe for adjudication, the Court declines to resolve whether Plaintiffs have standing to sue, or the merits of Plaintiffs' claims.

### III. Conclusion

Accordingly, for the reasons discussed above, the Court enters the following order:

**IT IS HEREBY ORDERED** that Plaintiffs' claims are not ripe for resolution, and thus **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendants The City of El Paso, John Cook, Joyce Wilson, Cortney Niland, Steve Ortega, Ann Morgan Lilly, Dr. Michiel Noe, and Susie Byrd's Corrected First Amended Motion to Dismiss (ECF No. 48) is **GRANTED IN PART, DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant-Intervenors Mountain Star Sports Group, LLC and Mountain Star Sports Group, LLC-El Paso Baseball Club Series' Motion to Dismiss (ECF No. 46) is **GRANTED IN PART, DENIED IN PART.**

**IT IS FURTHER ORDERED** that all pending motions, if any are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that Clerk of the Court **SHALL CLOSE THIS CASE.**

So ORDERED and SIGNED this 29th day of November, 2012.

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE